Appeal of **CHALMERS LIQUOR CO.,**    Docket No. 148.
INC., and
**CARMICHAEL & SONS CO., INC.**

The price paid by an individual for the controlling shares of stock in a corporation may not be added to merchandise cost and thereby claimed as a deduction by the corporation.

Where an individual, in addition to paying cash for the controlling shares of stock of a corporation, agrees to assume liability for income or excess profits taxes that may be levied for that portion of the calendar year before he assumed control of the corporation, he may not add the amount of such taxes, when ascertained, to merchandise cost for the year and thus obtain a deduction therefor.

Submitted October 27, 1924; decided November 8, 1924.

*J. M. Jordan, C. P. A.*, for the taxpayers.

*John D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, and STERNHAGEN.

FINDINGS OF FACT.

The taxpayer, Chalmers Liquor Co., Inc., was a Maryland corporation with its principal place of business in the city of Baltimore. The taxpayer, Carmichael & Sons Co., Inc., was incorporated under the laws of the State of Florida, with its principal place of business in the city of Tampa, Fla. The owner of practically all of the stock in the above-named corporations was Mr. Gabe Lippman, of Jacksonville, Fla., and he was the distributee of the assets of the two corporations upon their liquidation. The deficiency appealed from affects only the corporation of Carmichael & Sons Co., Inc., hereinafter referred to as the corporation. This deficiency amounted to $5,988.10, and was determined upon the disallowance of two items, one of $15,000 and the other of $4,156.76, as will hereinafter appear.

Mr. Gabe Lippman was for a long time prior to 1918 engaged in the retail and mail-order liquor business in Jacksonville, Fla. On June 30, 1918, Jacksonville was closed to the sale of liquor under local option, and Lippman opened a mail-order liquor house in Fernandina, Fla., shortly thereafter.

About the 1st of September, 1918, Lippman went to Tampa, Fla., with the purpose of establishing a liquor business there. He immediately deposited $50,000 with the Exchange National Bank. At that time he knew that prohibition would go into effect in the entire State of Florida on December 31, 1918. He found that no new liquor licenses were being issued; that in any event he could not obtain a license in his own name because he had not the required period of residence in Tampa; and that the only way in which he could engage in the liquor trade was to purchase an existing business.

Lippman opened negotiations with one John L. Moore, of Tampa, for the purchase of the business of the corporation. The corporation was a close one, having only 82 shares issued, of which Moore owned 79 shares. Moore agreed to sell the business and stock of liquor to Lippman. Thereupon Lippman paid Moore $27,347.13 for the following assets of the corporation:

| | |
|---|---|
| Merchandise, at inventoried price | $26,966.99 |
| Unexpired insurance policy, pro rated at | 164.79 |
| Unexpired liquor license, pro rated at | 215.35 |
| Total | 27,347.13 |

Moore agreed that all obligations of the corporation would be paid, and that he would settle with the other stockholders. At the time of making this purchase Lippman desired to conduct the business in his own name and assumed that he could have the liquor license transferred to him, but having ascertained that he could not have the license transferred and, as he had failed to buy the outstanding shares of stock of the corporation, he immediately negotiated with Moore to acquire these shares of stock in order that he might do business in the name of the corporation and thus use the liquor license he had attempted to purchase.

The negotiations were hurried, for less than four months' time remained before Lippman would be precluded by State prohibition from carrying on a liquor business in Florida. The resulting transaction was that Lippman paid Moore $15,000 for the 82 shares of

outstanding stock (par value $8,200) and took over the corporation. He then had to keep two shares of stock in the name of Moore, in order to use the liquor license, although the certificate was indorsed to him. In addition to paying the $15,000 for the shares of stock, Lippman was required to enter into an agreement to assume any income and excess profits taxes that might be assessed against the corporation for the period between January 1 and September 9, 1918.

On taking over the corporation, Lippman did not retain the books of account but opened a new set of books. Lippman caused an entry to be made crediting the $50,000 which he had deposited in his own name in the Exchange National Bank of Tampa to capital stock, although the actual capital stock outstanding was only $8,200. This entry nominally gave the corporation a paid-in surplus of $41,800, though all of the cash remained in the bank in the name of Gabe Lippman. All cash transactions and bills were paid by Lippman with his personal checks on this bank account for some considerable, but unascertained, time after taking over the corporation. The actual entries made in the books when they were opened were as follows:

| | | |
|---|---:|---:|
| Cash | $50,000.00 | |
| Capital stock | | $50,000.00 |
| Merchandise purchases | 26,966.99 | |
| Cash | | 26,966.99 |
| Merchandise purchases | 15,000.00 | |
| Cash | | 15,000.00 |
| Unexpired insurance | 164.79 | |
| Cash | | 164.79 |
| Unexpired license | 215.35 | |
| Cash | | 215.35 |

On these entries the corporation had a balance in bank of $7,652.87, or if the entry " Merchandise purchases, $15,000 ", which represented the cash paid by Lippman for the outstanding capital stock of the corporation (the certificates for which were held by him personally), is disregarded, the bank balance would have been $22,652.87. The accrued taxes for the period January 1 to September 8, 1918, were not entered because they were not known and could not be estimated at the time. However, it was admitted that had the amount been known at the time the books were opened the $4,156.76 would have been debited to " Merchandise purchases ".

After Lippman acquired control of the corporation he actively engaged in the business of selling liquor, using the funds deposited in the Exchange National Bank in his own name for meeting the liabilities of the corporation and depositing moneys received from the corporate transaction of the business in his personal account. At the close of the day of December 31, 1918, when State prohibition went into effect, the corporation had no assets but some furniture, which was of little value, and a sum of $88,280.03 in cash. As Lippman owned all of the shares of stock of the corporation, he took over the cash assets of the corporation on January 9, 1919, and closed the business. Subsequently, when Lippman filed a return for the corporation under the Act of February 24, 1919, generally known as the Revenue Act of 1918, he made claim for allowance as merchandise cost of the amount of the taxes for the period January 1 to September 9, 1918, which he had agreed to assume when he purchased the shares of stock from Moore.

### DECISION.

The Board determines that there is a deficiency with respect to Carmichael & Sons Co., Inc., in the amount of $5,988.10 income and excess profits taxes, and the determination of the Commissioner is hereby approved.

### OPINION.

GRAUPNER: The taxpayer alleges that the Commissioner erred in not allowing as deductions from gross sales of the corporation that which it declares to be the actual cost of merchandise or the actual cost of sales. In other words, it is contended that the $15,000 paid by Lippman for the 82 outstanding shares of stock of the corporation and the obligation which he assumed as a part of the transaction of acquiring the stock, viz, to pay whatever income and excess profits taxes might be assessed to the corporation for the period January 1 to September 9, 1918, should be properly charged against merchandise cost or cost of sales of the corporation. We can not agree with this contention.

On September 7, 1918, Lippman bought from the corporation merchandise of an inventoried value of $26,966.99 and paid that amount therefor. On September 9, 1918, he bought 82 shares or all of the outstanding certificates of stock of the corporation. Presumably, he immediately returned the liquors which constituted the *merchandise* to the corporation. There was no increase in the value of the liquors between the 7th and the 9th of September, 1918, and in the opening of the new books of the corporation *Merchandise purchases* were debited at $26,966.99, the exact amount which Mr. Lippman had paid to the corporation for them.

On the other hand, on September 9, 1918, Lippman personally owned all of the issued shares of the corporation. This gave him the privilege of doing business, of selling the liquors he had, and of purchasing and selling other liquors. The shares of stock were his, but they could not be a part of the merchandise or property of the corporation. Therefore, the $15,000 paid for the shares of stock was chargeable against Lippman personally and not against the merchandise of the corporation. The same is true regarding the liability assumed by Lippman as a part of the consideration assumed by him for the payment of taxes. Had the corporation continued in business and Lippman paid the tax of $4,156.76, the payment would have been for the balance due on his shares of stock and not *Merchandise purchases* or *Cost of sales.*

Lippman, as owner of the shares of stock of the corporation, stood to recover his personal expenditures for those shares from the profits of the corporation or deduct his individual losses if the stock became worthless. He can not be permitted to claim as deductions for the corporation those expenditures which were properly individual.